## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUNIPER NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-1258-SLR |
| | ) |
| PALO ALTO NETWORKS, INC., | ) |
| | ) |
| Defendant. | ) |

Jack B. Blumenfeld, Esquire and Jennifer Ying, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Morgan Chu, Esquire, Jonathan S. Kagan, Esquire and Lisa Glasser, Esquire of Irell & Manella LLP.

Phillip A. Rovner, Esquire and Jonathan A. Choa of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Daralyn J. Durie, Esquire, Ragesh K. Tangri, Esquire, Ryan M. Kent, Esquire, Sonali D. Maitra, Esquire, and Brian C. Howard, Esquire of Durie Tangri LLP.

## MEMORANDUM OPINION

Dated: August **ᏒᏆ**, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 19, 2011, Juniper Networks Inc. ("Juniper" or "plaintiff"), a Delaware corporation involved in the design, manufacture and sale of firewall technologies, filed suit against Palo Alto Networks, Inc. ("PAN" or "defendant"), another Delaware-based corporation in the same industry, alleging infringement of six patents, including United States Patent Nos.: 8,077,723 ("the '723 patent"); 7,779,459 ("the '459 patent"); 7,650,634 ("the '634 patent"); 7,302,700 ("the '700 patent"); 7,093,280 ("the '280 patent"); and 6,772,347 ("the '347 patent"). (D.I. 1)  Defendant answered plaintiff's complaint on February 9, 2012, affirmatively asserting that the patents were invalid. (D.I. 9)  On February 28, 2012, plaintiff filed a motion to strike defendant's affirmative defense of invalidity based upon the doctrine of assignor estoppel. (D.I. 12)  Plaintiff's motion to strike is presently before the court. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons discussed below, the court grants in part and denies in part the pending motion.[1]

## II. BACKGROUND

### A. The Parties

Juniper is a leading manufacturer of computer networking technologies, including firewalls.[2]  (D.I. 1 at ¶ 1)  In April 2004, Juniper bought the company NetScreen, an industry innovator in high-end network security devices, for $4 billion; NetScreen's

---

[1] Defendant's motion for leave to file a sur-reply is granted. (D.I. 37)

[2] According to plaintiff, firewalls "are designed to permit or deny network transmissions, typically based on a set of rules, and are frequently used to protect networks from unauthorized access while permitting legitimate communications to pass. As such, firewalls are important for running a secure network." (D.I. 13 at 4)

intellectual property rights were included as a part of this acquisition. (*Id.* at ¶ 13) Yuming Mao ("Mao") and Nir Zuk ("Zuk"), employees of NetScreen, began working for Juniper after the acquisition. (*Id.* at ¶ 14)

According to plaintiff, by 2006, Mao and Zuk had left Juniper to start PAN, a competing firewall manufacturer. (D.I. 13 at 6) Plaintiff notes that PAN's website identifies Zuk as PAN's "Founder and CTO" and a member of its Board of Directors and Mao as PAN's "Founder and Chief Architect." (*Id.* at 7) Plaintiff also emphasizes that several former Juniper employees work in high level positions at PAN. (*Id.*)

Defendant recounts a different version of events relating to Zuk and Mao's departure from Juniper and the formation of PAN. According to defendant, Zuk left Juniper in February 2005 to start PAN "with the notion of developing a new security switch. . . . Within a few months founding PAN, he conceived of the idea for the next-generation of firewall devices." (D.I. 21 at 3) By December of 2005, Zuk claims that he and three others, including Dave Stevens, Gerhard Eshelbeck and Fenming Gong, "developed a detailed business plan and architectural schema for [their next-generation firewall idea]." (*Id.*) It was not until January of 2006 that Mao left Juniper for employment at PAN. (*Id.*) According to defendant, Mao has never been an officer of PAN, has never served on the board of directors and has never been a regular participant at executive staff meetings; instead he has always reported to a vice president at the company.[3] (*Id.*) While defendant acknowledges that Mao was given the title "founder," he apparently asked for this title and was given it so that it would

---

[3] Originally he reported to the VP of Engineering but, after switching departments, now reports to the VP of Sales. (D.I. 21 at 4)

appear that he was receiving a promotion by joining PAN. (*Id.* at 4-5)

### B. The Patents-in-Suit

The patents-in-suit "all relate to core aspects of firewall technology." (D.I. 1 at ¶ 2) Mao and/or Zuk are listed as inventors on all the patents-in-suit. (*See* '723 patent listing Mao and Zuk as inventors; '459 patent listing Mao as an inventor; '634 patent listing Zuk as the inventor; '700 patent listing Mao as an inventor; '280 patent listing Mao as an inventor; and '347 patent listing Mao as an inventor) Mao and Zuk also signed inventor's oaths averring that they were the "first" and "original" inventors of the respectively claimed subject matter. (*See* D.I. 14 at exs. A, C, E, G, I and K) Furthermore, either Mao or Zuk assigned the "entire right, title and interest" of each of the claimed inventions to either NetScreen or Juniper for "valuable consideration." (*See* D.I. 14 at exs. B, D, F, H, J, L)

### C. The Lawsuit

Plaintiff claims to have "initiated this lawsuit after discovering that a substantial part of what Mao and Zuk brought to PAN when they founded it was the very same technology that they had previously developed and then assigned to NetScreen and Juniper during their employment." (D.I. 13 at 7) Defendant, in its answer to the complaint, lists the invalidity of the patents-in-suit as one of its affirmative defenses. (D.I. 9 at ¶ 53) In response, plaintiff filed the present motion to strike, claiming that any invalidity defense is inapplicable in light of the assignor estoppel doctrine. (D.I. 12)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) states: "The court may strike from a

3

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "As a general matter, motions to strike under Rule 12(f) are disfavored." *Fesnak and Associates, LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). "When ruling on a motion to strike, the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.  Further, a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Technologies, Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (internal quotations and citations omitted).

## IV.  DISCUSSION

### A.  The Assignor Estoppel Doctrine

In *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988), the Federal Circuit reaffirmed the existence of the doctrine of assignor estoppel.  As the court explained, "[a]ssignor estoppel is an equitable doctrine that prevents one who assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity.  The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor." *Id.* As the Court explained, the doctrine recognizes "the implicit representation by the assignor that the patent rights that he is assigning (presumably for value) are not worthless . . . To allow the assignor to make that representation at the time of the assignment (to his advantage) and later to repudiate it (again to his advantage) could work an injustice against the assignee." *Id.*

4

In *Diamond*, Dr. Clarence Welter ("Dr. Welter") developed a vaccine against gastroenteritis in swine and filed a patent application in conjunction with this invention. *Id.* at 1222. He subsequently assigned all rights to the application and patent to Diamond Scientific Co. ("Diamond"), his employer, for valuable consideration. *Id.* Dr. Welter eventually left Diamond to form his own company, Ambico, Inc. ("Ambico"), which began manufacturing and selling a gastroenteritis vaccine for swine. *Id.* Diamond filed suit for patent infringement, and Dr. Welter raised invalidity defenses. *Id.*

After concluding that assignor estoppel remained a valid defense, the Federal Circuit stated that an analysis of the doctrine "must be concerned mainly with the balance of equities between the parties." *Id.* at 1225. With this notion in mind, the Court noted the following:

> Dr. Welter assigned the rights to his inventions to Diamond in exchange for valuable consideration (one dollar plus other unspecified consideration-presumably his salary over many years and other employment benefits). Dr. Welter also executed an inventor's oath, which stated his belief, *inter alia,* that he was the first and sole inventor, that the invention was never known or used before his invention and that it was not previously patented or described in any publication in any country. Furthermore, Dr. Welter apparently participated actively in the patent application process, including drafting the initial version of the claims and consulting on their revision.

*Id.* The Court then concluded:

> We agree with the district court that the equities weigh heavily in favor of Diamond. Although the doctrine of assignor estoppel may no longer be a broad equitable device susceptible of automatic application, the case before us is appropriate for its use. When the inventor-assignor has signed the Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents, and has assigned the patent rights to another for valuable consideration, he should be estopped from defending patent infringement claims by proving that what he assigned was worthless. That is an implicit component of the assignment by Welter to Diamond which is immune from contradiction. The inventor's active participation in the

5

> prosecution and preparation of the patent applications, as is alleged here, would tilt the equities even more heavily in favor of the assignee, but consideration of this factor is not necessary to the result.

*Id.* at 1225-26.

While privity did not appear to be a primary concern in *Diamond* (presumably because there were no major questions surrounding Dr. Welter's formation of or the extent of control he exercised over Ambico), the Court did note that privity concerns are relevant in an assignor estoppel analysis.[4] *Id.* at 1224. The Federal Circuit, in *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990), reiterated that "[a]ssignor estoppel is an equitable doctrine . . . that is mainly concerned with the balance of the equities between the parties . . . [and t]hose in privity with the assignor partake of that balance; hence, extension of the estoppel to those in privity is justified." The *Shamrock* Court went on to explain that, "[p]rivity, like the doctrine of assignor estoppel itself, is determined upon a balance of equities." *Id.* In other words, "[i]f an inventor assigns his invention to his employer company A and leaves to join company B, whether company B is in privity and thus bound by the doctrine will depend on the equities dictated by the relationship between the inventor and company B in light of the act of infringement." *Id.* at 793. "The closer that relationship, the more the equities will favor applying the doctrine to company B." *Id.*

In *Shamrock*, Robert Luniewski ("Luniewski"), an employee of Shamrock Technologies, Inc. ("Shamrock"), agreed, as a condition of his employment, to assign all

---

[4] While neither party set out to define the term "privity," the court notes that it is generally defined as a "[d]erivative interest founded on, or growing out of, contract, connection or bond of union between parties; mutuality of interest." BLACK'S LAW DICTIONARY 1199 (6th ed. 1990).

work-related inventions to his employer. *Id.* at 790. One such invention was an

apparatus and method for processing polytetrafluoroethylene ("PTFE") with radiation.

*Id.* After assigning his rights to Shamrock, Lunieski left Shamrock and joined Medical

Sterilization, Inc. ("MSI") as a vice president in charge of operations; thereafter MSI

began processing PTFE with radiation. *Id.* On summary judgment, the district court

concluded that the doctrine of assignor estoppel was applicable to MSI and Lunieski's

claims of invalidity. *Id.* at 790. The Federal Circuit affirmed, explaining:

> The district court correctly determined that, considering the balance of
> equities and the relationship of Luniewski and MSI, no genuine issue of
> material fact exists regarding privity in this case. The undisputed facts are:
> (1) in July 1983 Luniewski left Shamrock to join MSI as Vice-President in
> charge of Operations; (2) Luniewski owns 50,000 shares of MSI stock; (3)
> MSI was formed in 1982 to sterilize surgical instruments and manufacture
> other medical goods; yet as soon as Luniewski was hired in 1983, MSI built
> facilities for processing PTFE with radiation; (4) Luniewski oversaw the
> design and construction of those facilities; (5) Luniewski was hired in part
> to start up MSI's infringing operations; (6) the decision to begin processing
> PTFE with radiation was made jointly by Luniewski and the president of
> MSI; (7) MSI began manufacturing PTFE with radiation in 1985; and (8)
> Luniewski was in charge of MSI's PTFE operation.

*Id.* at 794.

## B. The Parties' Contentions

Plaintiff argues, based upon its reading of *Diamond*, that defendant should be

estopped from asserting invalidity defenses since: 1) Zuk or Mao assigned the rights to

each patent-in-suit for valuable consideration; 2) Zuk or Mao each signed inventor's

oaths on the patents-in-suit; and 3) Zuk and Mao are founders of PAN, i.e. in privity with

PAN. (D.I. 13 at 11-14). In short, plaintiff asserts that defendant falls squarely within

the holding of *Diamond*.

Defendant disagrees.  First, defendant argues that Mao, the inventor and assignor of the '700, '280, '347 and '457 patents, is not in privity with PAN.  (D.I. 21 at 8-11)  Second, defendant argues that Zuk never signed an inventor's oath on the '723 patent or assigned it to Juniper.[5]

## C.  Analysis

### 1.  Mao and PAN's privity:  the '700, '280, '347 and '459 patents

Defendant argues that the doctrine of assignor estoppel is not applicable to the '700, '280, '347 and '459 patents because Mao is not in privity with PAN or, at the least, the issue of privity can not be determined at this point in time.[6]  (D.I. 21 at 11)  The court agrees with defendant.

As discussed above, privity is determined based upon a balancing of the equities; the greater the connection between Mao and PAN relative to the allegedly infringing activities, the more likely it is that privity exists.  At this point of the litigation, the court is not willing to say that the equities counsel in favor of applying the doctrine of assignor estoppel based upon Mao's connection to PAN.  While plaintiff notes that PAN's website identifies Mao as a "founder and chief architect" (D.I. 13 at 13),

---

[5] At points throughout its briefs, defendant emphasizes that the '723 and '459 patents issued from continuation applications that neither Zuk nor Mao ever assigned or attested to being the first inventors of; defendant also emphasizes that all the patents-in-suit (except patent '347) issued after Zuk and Mao left Juniper.  (D.I. 21 at 5)  The *Diamond* Court explained that these arguments are "irrelevant" to the issue of assignor estoppel.  *Diamond*, 848 F.2d at 1226.  Accordingly, those facts are not addressed in any further detail.

[6] Defendant does not appear to dispute that these patents were all assigned by Mao to Juniper or NetScreen for valuable consideration and Mao signed an inventor's oath.

8

defendant claims that Mao joined PAN well after its founding, he is not an officer or senior executive and he was not instrumental in the development of the allegedly infringing product. (*Id.* at 10-11) Defendant's answer also denies that Mao is a founder. (D.I. 9 at ¶ 3) In short, a factual dispute exists with respect to the degree of connection between Mao and PAN. Because the determination of privity (and the applicability of the assignor estoppel doctrine) with respect to these four patents is a fact-sensitive inquiry that must be resolved outside the pleadings, and given the standard of review applicable to motions to strike, the court denies plaintiff's motion at this time. A number of other courts have also denied similar motions at the pleadings stage, emphasizing that factual concerns relating to privity precluded such an early resolution of the matter. *See e.g., Third Wave Technologies, Inc. v. Eragen Biosciences, Inc.*, 2002 WL 32344427, at *1 (W.D. Wis. Dec. 16, 2002); *Schultz v. iGPS Co. LLC*, 2011 WL 37839, at *3 (N.D. Ill. Jan. 3, 2011).[7] In summary, because issues of material fact prelude resolution at this stage, summary judgment is a more appropriate venue for these arguments.

## 2. The '723 patent

The '723 patent lists as inventors Mao and Zuk. Mao executed an inventor's oath and assigned his rights in the invention to Juniper; Zuk signed neither of these documents. Accordingly, any motion to strike under the doctrine of assignor estoppel

---

[7] Plaintiff correctly points out that the court may look beyond the pleadings when considering a motion to strike based upon the doctrine of assignor estoppel; however, the court emphasizes that the matters should ordinarily be "uncontested factual matters." *Diamond*, 848 F.2d at 1227. The parties have asked the court to look well beyond the pleadings here and into highly disputed factual matters. *Diamond* did not indicate that such activity would be appropriate.

9

must be based on Mao's assignment[8] and, as discussed above, that is a matter more properly reserved for summary judgment.

### 3. The '634 patent

Zuk signed an inventor's oath with respect to the '634 patent and also assigned the invention claimed therein to NetScreen for valuable consideration. (D.I. 14 at exs. E, F) He has acknowledged being a founder of PAN. (D.I. 9 at ¶ 3) As such, the '634 patent falls squarely within the holding of *Diamond*. *Diamond*, 848 f.2d at 1224-26. Defendant does not genuinely contest that Zuk is in privity with PAN and falls within the *Diamond* holding. (D.I. 21 at 14-15) Accordingly, with respect to the '634 patent, plaintiff's motion to strike is granted.[9]

## V. CONCLUSION

For the reasons discussed above, the court grants plaintiff's motion with respect to the '634 patent but denies plaintiff's motion with respect to the remaining patents-in-suit. An appropriate order shall issue.

---

[8] Plaintiff admits as much in its reply brief. (D.I. 28 at 4, n.2) As plaintiff explains:

> Zuk is also a co-inventor of the '723 patent, which is an independent basis for assignor estoppel as to that patent. For purposes of this motion to strike, however, Juniper relies exclusively upon Mao's assignment of the '723 patent. The reason for this is that Zuk refused to sign the public, judicially-noticeable PTO assignment document. Accordingly, his assignment must be proven by employment documents which cannot be considered on a motion to strike.

(*Id.*)

[9] As defendant correctly points out, however, this finding does not preclude defendant from defending on the ground of non-infringement. *Diamond*, 848 F.2d 1226.

10