IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUNIPER NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 11-1258 (SLR) |
| v. | ) | |
| | ) | REDACTED - |
| PALO ALTO NETWORKS, INC., | ) | PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF REBECCA L. CLIFFORD IN SUPPORT OF
JUNIPER NETWORKS, INC.'S MOTION FOR SUMMARY JUDGMENT AND
PARTIAL SUMMARY JUDGMENT REGARDING INFRINGEMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

OF COUNSEL:                          *Attorneys for Plaintiff Juniper Networks, Inc.*

Morgan Chu
Jonathan S. Kagan
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010

Lisa S. Glasser
David C. McPhie
Rebecca L. Clifford
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
(949) 760-0991

Original Filing Date: August 20, 2013
Redacted Filing Date: August 28, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUNIPER NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1258 (SLR) |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DECLARATION OF REBECCA L. CLIFFORD</u>

I, Rebecca L. Clifford declare as follows:

1.      I am an associate at the law firm of Irell & Manella LLP, counsel of record for Plaintiff Juniper Networks, Inc. ("Juniper") in the above-captioned action.  I am a member in good standing of the State Bar of California and have been admitted *pro hac vice* in this case.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.  I make this declaration in support of Plaintiff Juniper Network, Inc.'s Opening Brief In Support Of Its Motion For Summary Judgment And Partial Summary Judgment Regarding Infringement.

2.      Attached hereto as **Exhibit A** is a true and correct copy of excerpts from a transcript for the deposition of Nir Zuk on June 4, 2010 in *Fortinet, Inc. v. Palo Alto Networks, Inc., and Patrick R. Brogan*.  This transcript was produced by Palo Alto Networks, Inc. in this matter and is numbered PAN002026010 through PAN002026106.

3.      Attached hereto as **Exhibit B** is a true and correct copy of excerpts of Palo Alto Networks, Inc.'s Response To Juniper Network, Inc.'s Third Set of Interrogatories served on September 10, 2012.

4.      Attached hereto as **Exhibit C** is a true and correct copy of excerpts from a transcript for the deposition of Dr. Michael D. Mitzenmacher on July 3, 2013.

5.      Attached hereto as **Exhibit D** is a true and correct copy of excerpts from the Expert Report of Dr. Michael Mitzenmacher on Non-Infringement of U.S. Patent Nos. 7,734,752; 7,650,634; 8,077,723; 6,772,347; 7,107,612; 7,302,700; and 7,779,459 served on May 13, 2013.

6.      Attached hereto as **Exhibit E** is a true and correct copy of excerpts from a transcript for the deposition of Dr. John C. Mitchell on July 10, 2013.

7.      Attached hereto as **Exhibit F** is a true and correct copy of excerpts from a transcript for the deposition of Nir Zuk on February 25, 2013.

8.      Attached hereto as **Exhibit G** is a true and correct copy of excerpts from a transcript for the deposition of Yuming Mao on February 26, 2013.

9.      Attached hereto as **Exhibit H** is a true and correct copy of excerpts from a document entitled ███████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001489772 through PAN001489836, and was marked as Exhibit 57 at the deposition of Lee Klarich on December 21, 2012.

10.     Attached hereto as **Exhibit I** is a true and correct copy of excerpts from a document entitled "Palo Alto Networks Administrator's Guide Release 4.1," which is publicly available, and was marked as Exhibit 244 at the deposition of Dr. Michael D. Mitzenmacher on July 3, 2013.

11.     Attached hereto as **Exhibit J** is a true and correct copy of excerpts from a document entitled ████████████████████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001995376 through PAN001995470, and was marked as Exhibit 130 at the deposition of Lee Klarich on February 1, 2013.

12.     Attached hereto as **Exhibit K** is a true and correct copy of excerpts from a document entitled ███████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN000569017 through PAN000569028.

13.     Attached hereto as **Exhibit L** is a true and correct copy of excerpts from a document entitled ███████████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001736583 through PAN001736660, and was marked as Exhibit 60 at the deposition of Lee Klarich on December 21, 2012.

14.     Attached hereto as **Exhibit M** is a true and correct copy of excerpts from a document entitled ████████████████████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001736581 through PAN001736582, and was marked as Exhibit 61 at the deposition of Lee Klarich on December 21, 2012.

15.     Attached hereto as **Exhibit N** is a true and correct copy of excerpts from a document entitled "PAN-OS: Day in the life of a packet," which is publicly available, and was marked as Exhibit 20 at the deposition of Wilson Xu on December 6, 2012.

16.     Attached hereto as **Exhibit O** is a true and correct copy of excerpts from a transcript for the deposition of Wilson Xu on December 6, 2012.

17.     Attached hereto as **Exhibit P** is a true and correct copy of excerpts from a transcript for the deposition of the (30)(b)(6) witness of Palo Alto Networks, Inc., Nir Zuk, on January 23, 2013.

18.     Attached hereto as **Exhibit Q** is a true and correct copy of excerpts of a document entitled ████████████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001003705 through PAN001003710.

19.     Attached hereto as **Exhibit R** is a true and correct copy of excerpts of Palo Alto Networks, Inc.'s Third Supplemental Response To Juniper Network, Inc.'s First Set of Interrogatories (No. 2) served on February 28, 2013.

20.     Attached hereto as **Exhibit S** is a true and correct copy of excerpts from the Request for Inter Partes Reexamination of U.S. Patent No. 7,650,634, as obtained from the United States Patent and Trademark Office.

21.     Attached hereto as **Exhibit T** is a true and correct copy of excerpts from a document entitled ███████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001735104 through PAN001735161, and was marked as Exhibit 62 at the deposition of Lee Klarich on December 21, 2012.

22.     Attached hereto as **Exhibit U** is a true and correct copy of excerpts from a document entitled ████████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001828005 through PAN001828015.

23.     Attached hereto as **Exhibit V** is a true and correct copy of excerpts from a document entitled ████████████████████ ████████████ produced by Palo Alto Networks, Inc. in this matter and numbered PAN001146261 through PAN001146294.

24.     Attached hereto as **Exhibit W** is a true and correct copy of Appendix A of the Expert Report of Dr. Michael Mitzenmacher on Non-Infringement of U.S. Patent Nos. 7,734,752; 7,650,634; 8,077,723; 6,772,347; 7,107,612; 7,302,700; and 7,779,459 served on May 13, 2013.

25.     Attached hereto as **Exhibit X** is a true and correct copy of excerpts of Palo Alto Networks, Inc.'s Response to Plaintiff Juniper Networks, Inc.'s Second Request for Admissions served on February 28, 2013.

Executed on August 20, 2013, at Newport Beach, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                    */s/ Rebecca L. Clifford*
                                                    Rebecca L. Clifford

# EXHIBIT A

## FULLY REDACTED

# EXHIBIT B

## FULLY REDACTED

# EXHIBIT C

## FULLY REDACTED

# EXHIBIT D

## FULLY REDACTED

EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE


JUNIPER NETWORKS, INC.,

             Plaintiff,

vs.                              CASE NO.  11-1258-SLR

PALO ALTO NETWORKS, INC.,

             Defendants.
_____/




VIDEOTAPED DEPOSITION OF JOHN C. MITCHELL, Ph.D.

PALO ALTO, CALIFORNIA

WEDNESDAY, JULY 10, 2013




BY:  ANDREA M. IGNACIO, CSR, RPR, CCRR, CLR

     CSR LICENSE NO. 9830

JOHN C. MITCHELL, Ph.D. - 7/10/2013

Page 58

1    MR. KENT:  Misstates testimony.
2    MR. MCPHIE:  Q.  -- correct?
3    MR. KENT:  Misstates testimony; vague and
4  ambiguous as to "route" under Juniper's or Palo Alto
5  Networks' proposed construction.
6    MR. MCPHIE:  And Mr. Kent, I'd ask that you
7  state your objection in a non-suggestive way as
8  required under the federal rules and local Delaware
9  rules.
10    THE WITNESS:  Well, I see that there is a
11  sentence that begins paragraph 837 that says:
12    "Bouchard discloses a first engine to route
13  packets to a second engine."
14    In relation to that sentence, another use of
15  the -- of the term "route," I believe it -- it should
16  be clear from an earlier paragraph of the par- -- of
17  the report that I'm conducting this analysis under an
18  understanding of route that's -- that's based on my
19  reading of Juniper's infringement contentions.
20    MR. MCPHIE:  Q.  Well, now I'm going to ask
21  you for your opinion, Dr. Mitchell.
22    A  Oh.
23    Q  Is it your opinion that the SSO of the Cavium
24  routes packets to engines on one or more cores?
25    A  Well, as I recall --

Page 59

1    MR. KENT:  Again, vague and -- vague and
2  ambiguous as to "routes."
3    You may answer.
4    THE WITNESS:  So -- so as I recall the
5  operation of this, you know, described in -- in the
6  Bouchard patent, the -- does -- the way that data is
7  transmitted and used doesn't correspond to the
8  ordinary use of routing that I'm familiar with -- the
9  term "routing" that I'm familiar with.
10    MR. MCPHIE:  Q.  That statement that you just
11  made, do you articulate it anywhere in your report?
12    A  I don't recall if I said that or not.
13    Q  Can you point me to anywhere in your report
14  where you take issue with or disagree with that
15  understanding of the term "route"?
16    A  I imagine, since you have prepared your
17  questions carefully, there -- there is no clear
18  statement.
19    On the other hand, the reason for carrying
20  out this analysis under an assumption about -- or an
21  un- -- or that -- in -- in connection with -- with
22  Juniper's infringement contentions, is that I don't
23  hold those -- those views myself personally.  This
24  seemed like the simplest way to make relevant comments
25  that are germane to the issues in the case.

Page 60

1    Q  So now, let's turn to the opinions as you
2  expressed them in your report; are you with me?
3    A  Yes.
4    Q  The opinions expressed in your report is
5  that, in fact, the POW or SSO routes packets to
6  engines on one or more cores of the Cavium chip;
7  correct?
8    MR. KENT:  Objection; misstates testimony,
9  number one.  Number two, it's vague and ambiguous as
10  to "routes."
11    You may answer.
12    THE WITNESS:  Well, yeah.  As I just
13  mentioned, there is a sentence that says pretty much
14  directly that.
15    So the reason why I gave a further
16  explanation of the con- -- of the context of this
17  point in the patent is to clarify the meaning of that
18  sentence.
19    MR. MCPHIE:  Q.  And in fact, it is your
20  understanding that different processing steps on the
21  Cavium chip occur on different cores; fair?
22    MR. KENT:  Objection; misstates testimony.
23  Objection; vague and ambiguous.
24    You may answer.
25    THE WITNESS:  I believe there is a

Page 61

1  characterization in the patent of different portions
2  as being different cores.  There are, as you know,
3  five patents that we're discussing and that my report
4  is -- is relevant to.
5    So maybe it's useful, if you don't mind, for
6  me to just take a quick look at it because I don't
7  have the patent in front of me.
8    MR. MCPHIE:  Q.  Do you need the question
9  again?
10    A  No.  I was just going to take a look, if I
11  had the Bouchard patent, to see if there is a labeling
12  of the components of the cores.  In any case, that's a
13  common way of referring to separate processing units.
14    Q  So one common way to handle different
15  processing steps on the Cavium is to have different
16  tasks take place on different cores; is that fair?
17    MR. KENT:  Objection; foundation.  Objection;
18  misstates testimony.  Objection; vague and ambiguous.
19    THE WITNESS:  You know, I believe that's in
20  some sense partially correct.  It would be helpful to
21  look at the patent and an illustration there, if you'd
22  like to do that.
23    MR. MCPHIE:  Q.  Is there any part that is
24  not correct?
25    Or when -- well, let me withdraw that.

16 (Pages 58 to 61)

JOHN C. MITCHELL, Ph.D. – 7/10/2013

Page 86

1    I'm not expecting a litmus test, but I'm
2  expecting some indications of properties of lookup
3  tables that might support an analysis showing that
4  something is not a lookup table.
5    I usually search -- search this on --
6  electronically in a PDF.
7    Do you have any idea where I should look?
8    **Q  Well, you're the author of the report;**
9  **correct?**
10   A  Yes.
11   Would you like one example, just to get
12 started?
13   **Q  Sure.  And just to frame the question**
14 **properly, what I've asked for is any material in your**
15 **report that explains how to determine whether or not**
16 **something is a lookup table.**
17   **Go ahead.**
18   A  Okay.  The example I have was -- has flow
19 table rather than lookup table, so maybe it's not
20 directly on point.
21   I can keep looking, if you'd like.
22   **Q  Please do.**
23   A  If you'd like, we could discuss one section
24 that I found that may be as -- as good as others, or I
25 could continue to keep looking.  I imagine you'll

Page 87

1  get -- we'll all get tired of saying nothing here, but
2  I'm happy to keep looking, if you'd like.
3    **Q  If you feel you've identified one place, we**
4  **can discuss that and then look for others.**
5    **What do you have?**
6    A  On page 58, there's a section entitled
7  "Session Lookup."
8    **Q  Okay.**
9    A  And it discusses a -- a lookup table of the
10 form that you've asked about in your past few
11 questions and refers to cost describing the process.
12   This is paragraph 165 of caching rule
13 processing results.  Caching is a particular technical
14 term that has to do with placing things in a lookup
15 table or other data structure that allows fast
16 retrieval.
17   There is a particular indication on the quote
18 from Bryers on the following page, page 59, that talks
19 about flow tables allowed for packet processing to be
20 rapidly directed.  And this discussion of slow or fast
21 path also indicates the necessary speed of direct
22 ability to determine presence in a flow table.
23   So these are all characteristics of lookup
24 table that I think are relevant.  If you can't look
25 something up quickly, then it's not a lookup table.

Page 88

1    **Q  So here you're looking -- withdrawn.**
2    **Here you're using the term "lookup table" to**
3  **mean a session table or flow table?**
4    A  Yeah.  The -- the particular link has to do
5  with the title here of -- of lookup session.  This is
6  called session lookup.  So I agree it's not explicit.
7  I haven't found a sentence that says something is a
8  lookup table if X, and not a lookup table if Y.
9    **Q  But that's what you understand is -- is meant**
10 **here in this portion of your report?**
11   MR. KENT:  Objection; vague and ambiguous.
12   You may answer.
13   THE WITNESS:  I mean, the notion of -- from
14 data structures and computing, being able to look
15 something up is a -- is a -- an understood term, so I
16 didn't feel the need to go into that.
17   But this section does provide some
18 information about characteristics of lookup tables
19 that's necessary for them to be useful in this
20 context.
21   MR. MCPHIE:  Q.  And you felt one would have
22 understood that this discussion of flow tables
23 corresponded to a lookup table?
24   A  I mean, to the extent that that's indicated
25 by the section heading, yes.

Page 89

1    **Q  And in fact, that was your intent in drafting**
2  **this section?**
3    A  It was not my explicit intent to provide
4  criteria for determining that data structure is not a
5  lookup table.  I didn't address that point here
6  directly.  But this section does have some bearing on
7  the question, and that's why I pointed to it.
8    **Q  Yes.**
9    **And what I meant was that your intent in**
10 **drafting this section was to use the concept of a**
11 **lookup table interchangeably with the concept of a**
12 **session table or flow table?**
13   MR. KENT:  Objection; misstates testimony.
14   THE WITNESS:  I mean, it's possible to
15 provide -- to have a flow table that's not a lookup
16 table potentially, although in this context, that's --
17 the expected connection is that it's easy to look up
18 directly in a flow table whether a packet is relevant
19 to the existing flow.  And in that sense, a lookup
20 table is implied.
21   MR. MCPHIE:  Q.  In the context of your
22 report, the expectation was that a flow table would be
23 a lookup table?
24   A  Yeah, in -- in this particular section, at
25 least.

23 (Pages 86 to 89)

JOHN C. MITCHELL, Ph.D. - 7/10/2013

Page 90

1    **Q  Was there any other section of your report**
2  **that you were able to identify that explained how to**
3  **determine whether something is or is not a lookup**
4  **table?**
5    A  I didn't see anything in the time that I
6  took.
7       I was expecting there might be something in
8  relation to cost which talks about a flow table or
9  lookup table, and then rules that, by contrast with
10  the rule search process, there would be an indication
11  of -- I mean, that clearly states that something is
12  distinct from a table.  So that's one example.
13      There's also in a specification of one of the
14  patents that talks about rules and distinguishes them
15  from session or lookup table.  I'm not completely
16  certain on exactly the terminology used.  But that
17  section would also be relevant to the distinction you
18  asked about.
19    **Q  But in the time you took to look, you did not**
20  **identify any section that specifically discussed the**
21  **criteria for discussing whether something was or was**
22  **not a lookup table; fair?**
23    A  Fair enough.  I believe it would be
24  relatively straightforward.  The electronic copy of
25  the -- the report, you just search for the term

Page 91

1  "lookup table" and see what there is.  That is
2  probably more efficient than my shuffling paper here
3  in front of you.
4    **Q  And you took a number of minutes just now to**
5  **look for it?**
6    A  A few minutes, yeah.
7    **Q  One of the things that you attempted to do in**
8  **connection with your report was to identify the**
9  **references that made the very best case for your**
10  **opinions regarding invalidity; correct?**
11    MR. KENT:  Objection.
12    THE WITNESS:  I don't know that that was
13  really my task.
14      As we discussed, these particular references
15  were identified for me.
16    MR. MCPHIE:  Q.  Just to use an example, for
17  example, you pointed to a passage that cited the
18  Bryers reference?
19    A  Yes.
20    **Q  And that's distinct -- we have a Byres**
21  **reference and a Bryers reference.**
22    A  Absolutely.
23    Q  Okay.  Now, you -- well, withdrawn.
24    **Your report contains some discussion of**
25  **Bryers in the introductory portions; correct?**

Page 92

1    A  Yes.
2    **Q  But at no point do you go through an**
3  **invalidity analysis of an element-by-element matching**
4  **with the Bryers reference; is that fair?**
5    A  I believe that's correct.  I believe there is
6  something with Byres, but not Bryers on that point.
7    **Q  So -- and maybe let's use a different**
8  **example.  So Schneider is another one.**
9    A  Okay.
10    **Q  You make a mention of Schneider in the**
11  **introductory portions of your report; correct?**
12    A  Yes.
13    **Q  But nowhere in your report do you provide a**
14  **detailed element-by-element analysis of invalidity as**
15  **would be required to show invalidity based on**
16  **Schneider; fair?**
17    A  I believe that's correct.
18    They're -- I also believe that most or all of
19  those references are mentioned and used in some way in
20  a discussion of obviousness.
21    So -- and otherwise, they're primarily, if
22  they're not gone into in detail, they're to set some
23  understanding of what was known at the time of the
24  patent filing.
25    **Q  But you certainly looked at all of these**

Page 93

1  **other references in detail before including them in**
2  **your report; correct?**
3    A  Yes, I read them.
4    **Q  Including Bryers and Schneider and Albert and**
5  **Davis and so forth?**
6    A  Yeah, I have copies of all those, and I read
7  through them.
8    **Q  And if at any point you had felt that any of**
9  **those references could stand on its own as an**
10  **anticipation or obviousness reference, you would have**
11  **raised it to someone's attention and included it as a**
12  **formal anticipation or obviousness reference in your**
13  **report; correct?**
14    A  If I had noticed that, I would have mentioned
15  it.  I don't believe I was asked specifically to make
16  an evaluation of that sort.  So it's possible that I
17  missed something.
18    **Q  At the time of your report, your opinion was**
19  **that the Xylan, Shani and Byres references were the**
20  **references -- well, let me withdraw that.**
21    **At the time of your report, you relied on the**
22  **Xylan, Shani and Byres references to show the formal**
23  **102 and 103 anticipation obvious analysis; correct?**
24    A  Yes, those are the --
25    MR. KENT:  Objection; vague and ambiguous as

24 (Pages 90 to 93)

# EXHIBIT F

## FULLY REDACTED

# EXHIBIT G

## FULLY REDACTED

# EXHIBIT H

## FULLY REDACTED

EXHIBIT I

# Palo Alto Networks
# Administrator's Guide
Release 4.1





EXHIBIT
7-3-13
244
Mitzenmacher

4.  To add individual users, enter a search string in the **User** search field and click **Find**. You can then select users and click **Add User**. Alternatively, you can enter individual user names in the **Additional Users** area.

5.  Click **OK** to save the selections and update the security or decryption rule.

# Security Policies

Security policies determine whether to block or allow a new network session based on traffic attributes such as the application, source and destination security zones, the source and destination addresses, and the application service (such as HTTP). Security zones are used to group interfaces according to the relative risk of the traffic they carry. For example, an interface connected to the Internet is in an "untrusted" zone, while an interface connected to the internal network is in a "trusted" zone.



> **Note:**  By default, traffic between each pair of security zones is blocked until at least one rule is added to allow traffic between the two zones.
>
> Intra-zone traffic is allowed by default and requires an explicit block rule. If a deny all rule is added as the last rule in the policy, intrazone traffic will be blocked unless otherwise allowed.

Security policies can be as general or specific as needed. The policy rules are compared against the incoming traffic in sequence, and because the first rule that matches the traffic is applied, the more specific rules must precede the more general ones. For example, a rule for a single application must precede a rule for all applications if all other traffic-related settings are the same.

## Defining Security Policies

▶   *Policies > Security*

Use the **Security** page to define security policy rules. For configuration guidelines, refer to "Guidelines on Defining Policies" on page 132.

**Table 65.   Security Policy Settings**

| Field | Description |
|---|---|
| **General Tab** | |
| Name | Enter a name to identify the rule (up to 31 characters). The name is case-sensitive and must be unique. Use only letters, numbers, spaces, hyphens, and underscores. Only the name is required. |
| Description | Enter an option description of the policy rule. |
| Tag | If you need to tag the policy, click **Add** to specify the tag. |
| **Source Tab** | |
| Source Zone | Click **Add** to choose source zones (default is any). Zones must be of the same type (Layer 2, Layer 3, or virtual wire). To define new zones, refer to "Defining Security Zones" on page 105. |
| | Multiple zones can be used to simplify management. For example, if you have three different internal zones (Marketing, Sales, and Public Relations) that are all directed to the untrusted destination zone, you can create one rule that covers all cases. |

# EXHIBIT J

## FULLY REDACTED

# EXHIBIT K

## FULLY REDACTED

# EXHIBIT L

## FULLY REDACTED

# EXHIBIT M

## FULLY REDACTED

EXHIBIT N



# PAN-OS: Day in the life of a packet
Packet flow sequence in PAN-OS

October 2010

Palo Alto Networks
232 E. Java Dr.
Sunnyvale, CA 94089
408.738.7700
www.paloaltonetworks.com



EXHIBIT
20
12/6/12 AD
PENGAD 800-631-6989





Ingress
Receive packet
Packet ingress process
Extract L2/L3/L4 information,
ingress interface/zone lookup,
IP fragment reassembly if applicable
Discard packet
Ingress process error?
FW inspection applicable?
IPSec/SSL-VPN tunnel packet?
IPSec/SSL-VPN tunnel decryption
FW Session Setup/Slowpath
Forwarding lookup
Get egress interface/zone and VSYS from L3 route,
L2 FDB lookup, etc
NAT policy lookup
(If destination NAT is present on matched rule, do second forwarding lookup to get final/real Egress interface/zone)
Firewall security policy lookup
(Use application "ANY" to see if there is any rule match that allow packet for given addresses and ports. By default allow same zone and deny different zones if no match for configured rules)
Rule match with action allow?
Discard packet
Create and install session
FW Fastpath
Firewall session lookup
Session match found?
L2-4 Firewall processing
Discard packet if session not in active state, update session lifetime, do NAT if applicable
SSL proxy: decrypt packet if applicable
Session App identified?
Content inspection applicable?
Content Inspection (SP3/CTD)
Content inspection
(protocol parsing/decoding, content matching, tunneled application detection)
Application changed from content inspection?
Detection result from inspection?
Apply security profile action
(send alert, set session to discard ...)
SSL proxy: re-encrypt packet if applicable
Application Identification
App-override policy match?
Pattern-based application identification
Security policy lookup based on application
Rule match with action allow?
Discard packet
Content inspection setup
(Setup SP3 if security profile is specified, set session to discard if security rule action deny, also set QoS class from QoS policy lookup)
Application is SSL and decryption policy match?
SSL proxy: mark session to be proxied
Forwarding/Egress
Packet forwarding process
Use ingress interface to get forwarding domain, do route/switch/vwire forwarding
Packet egress process
QoS shaping, IP fragmentation if applicable
Egress to tunnel interface?
IPSec/SSL-VPN tunnel encryption
(Tunnel resolution, packet encryption)
Transmit packet

# EXHIBIT O

## FULLY REDACTED

# EXHIBIT P

## FULLY REDACTED

# EXHIBIT Q

## FULLY REDACTED

# EXHIBIT R

## FULLY REDACTED

EXHIBIT S

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Reexamination of:     U.S. Patent No. 7,650,634

Inventor(s):     Nir Zuk

U.S. Patent No.     7,650,634

Filing Date:     Mar. 28, 2003

Issued:     Jan. 19, 2010

Title:     *INTELLIGENT INTEGRATED NETWORK SECURITY DEVICE*

Attorney Docket No.:     PALOG634REX

Customer No.:     21912

**REQUEST FOR *INTER PARTES* REEXAMINATION
OF U.S. PATENT NO. 7,650,634
<u>UNDER 35 U.S.C. §§ 311-318 AND 37 C.F.R. § 1.915</u>**

**Mail Stop *Inter Partes* Reexam**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

the respective ones of the two or more security devices to facilitate processing of the data packet (e.g., extracting flow instructions, a session ID and flow information from the fixed affinity, and sending the extracted information to the forwarding agents or the service managers), that receives, from each of the two or more security devices, evaluation information being generated by a respective one of the two or more security devices when processing the data packet (e.g., receive data in the fixed affinity generated by the service managers, or receive interest data generated by the forwarding agents), and that processes the data packet using the evaluation information (e.g., processing, dispatching, dropping, or forwarding the data packet using the evaluation information; performing service functions such as load balancing using the evaluation information). (*See, e.g.,* Albert, FIG. 2A, FIG. 4, FIG. 5, FIG. 6, 6:18-9:30, 13:13-16:9, as further discussed in detail below)

As shown in detail below, Albert discloses each of the elements of Claims 1-41 of the 634 patent. Requester respectfully submits that, as presented in detail below, Albert establishes a reasonable likelihood that the Requester will prevail with respect to at least one of the claims challenged in the present request for reexamination of Claims 1-41 of the 634 patent.

A detailed analysis is provided below and a claim chart demonstrating the applicability of Albert to Claims 1-41 is attached at CC-A (35 U.S.C. § 102 chart) to comply with 37 C.F.R. § 1.915(b)(3). Accordingly, as will be shown in detail below, Claims 1-41 should be reexamined, rejected under 35 U.S.C. § 102 and cancelled pursuant to this Request. The Requester therefore submits that the RLP standard is met as to Claims 1-41 by Albert.

### 2. Independent Claim 1 Is Anticipated By Albert Under 35 U.S.C. § 102

Referring to Claim 1 of the 634 patent, the preamble recites, "A method for inspecting data packets associated with a flow in a computer network, the computer network including two

or more security devices for processing the data packets, each data packet having associated header data, the method comprising." The claim preamble is descriptive of intended use without adding any structure or substance to the claim, and is, thus, non-limiting. (*See* MPEP 2111.02) To the extent that this preamble description is required to be found in the prior art, it is found in Albert as cited below.

Albert discloses inspecting data packets associated with a flow in a computer network. For example, Albert discloses a "primary service manager [that] keeps track of flows that are being serviced and maintains instructions for the flows according to the traffic that the service manager monitors for the flows." (Albert, 3:54-57)

Albert also discloses that the computer network includes two or more security devices for processing the data packets. In particular, Albert discloses, in connection with FIG.1, a prior art network service appliance that provides security services; and that in providing security services, the network service appliance may function as a proxy, a firewall, or an intrusion detection device. (*See, e.g.*, Albert 2:12-21) Albert's invention relates to an improved network service appliance. According to Albert, "[f]or purposes of this specification, a network service appliance that acts as a load balancer will be described in detail. It should be noted that the architecture and methods described are equally applicable to a network service appliance that is functioning as one of the other above described devices." (Albert, 2:16-21)

for use by the two or more security devices in processing the data packet, since it describes that "[o]nce a service manager determines how a certain flow is to be handled, the service manager sends a fixed affinity to ***each forwarding agent***." (Albert, 8:19-21, emphasis added)

### 4.     Independent Claim 19 Is Anticipated By Albert Under 35 U.S.C. § 102

For similar reasons as discussed above, with respect to Claim 1, Claim 19 is anticipated by Albert under 35 U.S.C. § 102.

Referring to Claim 19 of the 634 patent, the preamble recites, "A computer-readable memory device incorporating instructions for inspecting data packets associated with a flow in a computer network, the computer network including two or more security devices for processing data packets, each data packet having associated header data, the instructions to:."  The claim preamble is descriptive of intended use without adding any structure or substance to the claim, and is, thus, non-limiting.  *See* MPEP 2111.02.  To the extent that this preamble description is required to be found in the prior art, it is found in Albert as cited below.

Albert teaches a computer-readable memory device incorporating instructions. Specifically, Albert discloses that "[i]t should be appreciated that the present invention can be implemented in numerous ways, including as a process, an apparatus, a system, a device, a method, or a computer readable medium such as a computer readable storage medium or a computer network wherein program instructions are sent over optical or electronic communication links." (Albert 3:65-4:4) Albert further discloses inspecting data packets associated with a flow in a computer network, the computer network including two or more security devices for processing the data packets, each data packet having associated header data. (*See*, Claim 1 preamble)

# EXHIBIT T

## FULLY REDACTED

# EXHIBIT U

## FULLY REDACTED

# EXHIBIT V

## FULLY REDACTED

# EXHIBIT W

## FULLY REDACTED

EXHIBIT X

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUNIPER NETWORKS, INC., a Delaware corporation, )<br>)<br>) | |
|        Plaintiff, )<br>) | C.A. No. 11-1258-SLR |
|    v. )<br>) | **JURY TRIAL DEMANDED** |
| PALO ALTO NETWORKS, INC., a Delaware corporation, )<br>)<br>) | |
|       Defendant. ) | |

## PALO ALTO NETWORKS, INC.'S RESPONSE TO PLAINTIFF JUNIPER NETWORKS, INC.'S SECOND REQUEST FOR ADMISSIONS (NOS. 9-265)

Pursuant to Rules 26 and 36 of the Federal Rule of Civil Procedure, Defendant PALO ALTO NETWORKS, INC. ("Defendant" or "PAN") hereby provides these responses and objections to Plaintiff JUNIPER NETWORKS, INC.'s ("Plaintiff" or "Juniper") second set of requests for admission dated January 29, 2013, as follows:

## PRELIMINARY STATEMENT

The following responses are based upon the facts, documents, and information presently known and available to PAN. Discovery, investigation, research, and analysis are ongoing, and may disclose the existence of additional facts or documents, add meaning to known facts or documents, or lead to additions to, or withdrawals of, these responses under Fed. R. Civ. P. 26(e) and 36(b).

The objections set forth below are intended to apply to all responses provided pursuant to these requests. Furthermore, these responses do not in any way waive any objections by PAN, in this or in any subsequent proceeding, on any grounds, including objections as to the competency, relevancy, materiality, privilege, or admissibility of the responses, or the subject matter thereof.

objects that the phrase "received data packets" is vague and ambiguous. Subject to the foregoing general objections, PAN admits that one or more PAN Accused Products in the United States has received data packets.

**REQUEST FOR ADMISSION NO. 10:**

Admit that one or more PAN Accused Products in the United States has examined data packets.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrase "examined data packets" is vague and ambiguous. Subject to the foregoing general objections, PAN admits that one or more PAN Accused Products in the United States have processed data packets.

**REQUEST FOR ADMISSION NO. 11:**

Admit that one or more PAN Accused Products in the United States has determined a packet identifier using at least header data associated with a data packet.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrases "determined a packet identifier" and "associated with a data packet" are vague and ambiguous, and to the extent the request can be comprehended, it calls for a legal conclusion. Subject to the foregoing objections, PAN admits that one or more PAN Accused Products in the United States has determined information by using at least header data of a packet.

**REQUEST FOR ADMISSION NO. 12:**

Admit that one or more PAN Accused Products in the United States has determined a single flow record associated with a data packet received.

**REQUEST FOR ADMISSION NO. 31:**

Admit that one or more PAN Accused Products configured in Active/Active High Availability mode in the United States has shared flow records with one or more other PAN Accused Products.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrase "shared flow records" is vague and ambiguous, and to the extent the request can be comprehended, it calls for a legal conclusion. Subject to the foregoing objections, PAN admits that one or more PAN Accused Products configured in Active/Active High Availability mode in the United States has sent synchronization messages to another PAN Accused Product likewise configured in Active/Active High Availability mode.

**REQUEST FOR ADMISSION NO. 32:**

Admit that one or more PAN Accused Products configured in Active/Active High Availability in the United States has provided failover support for one or more other PAN Accused Products.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrase "failover support" is vague and ambiguous, and to the extent the request can be comprehended, it calls for a legal conclusion. Subject to the foregoing objections: Admitted.

**REQUEST FOR ADMISSION NO. 33:**

Admit that PAN has used one or more Accused Products in the United States to receive one or more packets via a network that includes a plurality of distinct security domains.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrases "security screening," "passing between two security zones," "routing the screened packet," and "forwarding on the network" are vague and ambiguous, and to the extent the request can be comprehended, it calls for a legal conclusion.  Subject to the foregoing objections, PAN admits that that one or more PAN Accused Products in the United States performs security processing on a packet before it is forwarded.

**REQUEST FOR ADMISSION NO. 39:**

Admit that one or more PAN Accused Products in the United States has determined the source and destination zone for packets received.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrase "source and destination zone" is vague and ambiguous, and to the extent the request can be comprehended, it calls for a legal conclusion.  Subject to the foregoing objections, PAN admits that that one or more PAN Accused Products in the United States has determined the source and destination for packets received.

**REQUEST FOR ADMISSION NO. 40:**

Admit that one or more PAN Accused Products in the United States has been configured with zone-specific policies.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

In addition to the general objections, which are incorporated herein by reference, PAN objects that the phrases "configured" and "zone-specific policies" are vague and ambiguous, and to the extent the request can be comprehended, it calls for a legal conclusion.  Subject to the foregoing objections, PAN admits that in one or more PAN Accused Products in the United

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 28, 2013, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                   *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza
Wilmington, DE  19801
*Attorneys for Defendant*

Daralyn J. Durie, Esquire                                   *VIA ELECTRONIC MAIL*
Ragesh K. Tangri, Esquire
Ryan M. Kent, Esquire
Brian C. Howard, Esquire
Sonali D. Maitra, Esquire
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
*Attorneys for Defendant*

Harold J. McElhinny, Esquire                                *VIA ELECTRONIC MAIL*
Michael A. Jacobs, Esquire
Matthew A. Chivvis, Esquire
Matthew I. Kreeger, Esquire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)