## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUNIPER NETWORKS, INC., )<br>)<br>     Plaintiff, )<br>)  C.A. No. 11-1258-SLR<br>   v. )<br>)<br>PALO ALTO NETWORKS, INC., )<br>)<br>     Defendant. ) | |

**DEFENDANT PALO ALTO NETWORKS, INC.'S OBJECTIONS TO
THE COURT'S FINAL JURY INSTRUCTIONS**

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP<br>Philip A. Rovner (#3215)<br>Jonathan A. Choa (#5319)<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE 19899<br>(302) 984-6000 |
| OF COUNSEL: | provner@potteranderson.com<br>jchoa@potteranderson.com<br>*Attorneys for Defendant Palo Alto Networks* |
| Harold J. McElhinny<br>Michael A. Jacobs<br>Matthew I. Kreeger<br>Matthew A. Chivvis<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>(415) 268-7000 |  |
| Daralyn J. Durie<br>Ryan M. Kent<br>Durie Tangri LLP<br>217 Leidesdorff Street<br>San Francisco, CA 94111<br>(415) 362-6666 |  |

PAN maintains the following objections to the Court's Final Jury Instructions that were distributed on February 28, 2014:

I.  **JURY INSTRUCTIONS**

   A.  **Direct Infringement by Literal Infringement (P. 19-20)**

PAN raises the following additional objections to this paragraph of the Court's instructions (p. 20):

> In this case, the asserted claims are not limited to ASICs or ACL engines or any other specific product. Whether PAN uses or does not use ASICs or ACL engines is not relevant to the determination of whether the accused products literally infringe.

As PAN previously noted, the entire paragraph is unnecessary and prejudicial to PAN, as PAN never argued that the claims of the asserted patents are limited to ASICs, ACL engines, or specific NetScreen products. But the Court's second sentence poses several additional problems:

First, the Court changed the sentence from saying ASICs are not relevant "in determining literal infringement" to ASICs are not relevant "to the determination of whether the accused products literally infringe." The phrase "literally infringe" creates an ambiguity as to whether this is limited to literal infringement (as the Court appears to have intended) or could also apply to doctrine of equivalents if the jury uses "literally" in the colloquial, non-legal sense.

Second, by instructing the jury not to consider the absence or presence of ASICs/ACLs in PAN's products, the Court is essentially instructing them to ignore how the accused products actually work. Because PAN's products do not use ASICs with fixed packet denial decisions, they do not need a system for reversing denials. PAN's products deny a packet once and do not reconsider that decision. The absence of ASICs in PAN's products is relevant to understanding how and why the products operate the way they do. This explanation of the products would be

1

equally valid even if the patent specification said nothing about ASICs. The Court's instruction improperly guides the jury to ignore that relevant aspect of PAN's products.

Third, ***Juniper specifically cross-examined PAN's expert, Dr. Mitzenmacher, on Figure 6 of the '347 patent***, which depicts a preferred embodiment that includes the "ACL Engine." (Trial Tr. vol. E, 957:6-958:9, Feb. 28, 2014.) Juniper's counsel asked Dr. Mitzenmacher whether "Figure 6 in the patent is a depiction of a way to practice the claims of the '347 patent" and Dr. Mitzenmacher acknowledged that it was. (*Id*. at 957:15-18.) Having been asked specifically about the preferred embodiment incorporating the "ACL Engine," PAN and Dr. Mitzenmacher should be permitted to respond that PAN's products do not contain an ACL Engine as shown in that figure, and the jury should not be instructed to disregard that evidence.

Fourth, the absence of ASICs in PAN's products is also relevant to the jury's weighing of the credibility of the competing explanations from the parties' technical experts. Understanding the role of ASICs in the embodiment of the patented invention, and comparing that to the role of the Cavium processor in the PAN products, is important to determining whether Dr. Rubin's or Dr. Mitzenmacher's explanations are more credible. For instance, Dr. Mitzenmacher testified that the accused products deny packets only once (indicated by the setting of the action value "deny") and never reconsider that decision. Accordingly, there is no "initial denial" of packets that is subsequently reversed. Critiquing this view, Dr. Rubin testified that it makes no sense to focus on whether an action value has changed to determine if packets are initially denied, because action values do not ordinarily change once they are set (i.e., once the action value is set to "deny," the packet is dropped). (Trial Tr. vol. B, 371:1-19, Feb. 25, 2014.) But on cross-examination, Dr. Rubin confirmed that reversing an action value of "deny" does make sense and is possible *in the context of a system using an ASIC/ACL*. (Trial Tr. vol. C, 533:12-23, Feb. 26,

2

2014.) For the jury to evaluate the merits of these competing expert positions, it should be permitted to consider the invention as applied in an ASIC/ACL system, precisely as it is described in the patent specification. The Court's instruction would instead ask the jury to disregard this point.

The district court's decision in *Cimcore Corp. v. Faro Technologies, Inc.*, is instructive on this point. No. 03 CV 2355-B (WMC), 2007 WL 935665, at *2-3 (S.D. Cal. Mar. 12, 2007). The court in that case denied a request for new trial based on alleged prejudicial evidence regarding a preferred embodiment of the patent. The court "permitted demonstrative evidence of the preferred embodiment to assist the jury in understanding the technology of the patent and the visualization of particular claim terms." *Id.* at *2. Quoting the Federal Circuit, the court observed: "Although claims are not necessarily restricted in scope to what is shown in a preferred embodiment, neither are the specifics of the preferred embodiment irrelevant to the correct meaning of claim limitations." *Id.* at *3 (*quoting Phonometrics, Inc. v. Northern Telecom Inc.,* 133 F.3d 1459, 1466 (Fed. Cir. 1998)). To avoid any excessive reliance by the jury on the preferred embodiment, the court provided instructions on how to analyze infringement and how to view the embodiments. This court has similarly provided adequate instructions to the jury on infringement analysis and proper uses of the specification.

Given that Juniper's expert also made use of the specification to support his analyses (*e.g.*, using the embodiment of "lookup table" to narrowly define that term), PAN again proposes that if any instruction is to be given, it should be neutral and not single out PAN's reliance on the specification. PAN proposes the following to replace the above-quoted paragraph:

> Both parties have referred during the trial to specific embodiments of the claimed inventions disclosed in the patent specifications. Your infringement decision must focus on the language of the

3

claims as construed by the Court. You may use the specification only for the purposes described in the earlier instruction.

**B.     Expert Witnesses (P. 10)**

PAN maintains its objection to the following paragraph in the Court's instruction:

> PAN's expert conducted certain testing on PAN's source code. In so doing, he was given greater access to PAN's source code than had been given to Juniper's expert in the first instance. In evaluating the expert testimony in this case, you may not draw any adverse inference against Juniper just from the fact that PAN's expert conducted this type of testing and Juniper's expert did not.

This paragraph does not accurately reflect the access to PAN's source code that PAN afforded to Juniper's expert. For accuracy, PAN previously proposed adding the following sentence to this instruction: "*Juniper's expert was later offered an opportunity to propose his own testing to be performed on the source code, but he chose not to do so.*"

**C.     Claim Construction (P. 17)**

PAN objects that this instruction does not include a construction for the term "third engine" in claim 1 of the '723 patent. The term "third engine" should be construed commensurately with "first engine" and "second engine," so as to be "third processor."

PAN also objects to the exclusion from this instruction of certain of its proposed claim constructions:

1) For the '347 patent, PAN objects to the exclusion of:
   a. Proposed construction of "[sorting/processing] . . . packets into ... initially denied packets" as "applying rules to make a first determination that identifies packets to be dropped."

2) For the '612 patent, PAN objects to the exclusion of:
   a. Proposed construction of "[r]ule" as "a policy for filtering packets across multiple sessions, as distinct from a lookup table."

3) For the '723 patent, PAN objects to the exclusion of:
   a. Proposed construction of "[first/second/third] engine" as "software program on a first/second/third processor."

4

  b. Proposed construction of "rout[e] ... [a/the] packet" as "send a packet from a source to its intended destination."
  c. Proposed construction of "[a] tag" as "a structure for holding data that is sent along with a packet."

 **D.** **Infringement Under the Doctrine of Equivalents (P. 21)**

PAN also renews its objection to the last sentence of this instruction, which states "In order to prove infringement by 'equivalents,' Juniper must prove the equivalency of the structure or steps to a claim limitation by a preponderance of the evidence." This instruction does not adequately reflect the Federal Circuit's guidance that "a patentee must [] provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process . . . to support a finding of infringement under the doctrine of equivalents. . . . on a limitation-by-limitation basis." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *accord Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1365 (Fed. Cir. 2007). PAN renews its proposed alternative language:

> In order to prove infringement by "equivalents," Juniper must prove, with specificity, the equivalency of the accused structure or steps to a particular claim limitation by a preponderance of the evidence.

PAN also renews its objection to the provision of any jury instruction on doctrine of equivalents, because Juniper's DOE theories are barred by legal principles, including prosecution history estoppel, disclaimer, and/or ensnarement.

 **E.** **Proposed Additional Instructions**

  **1.** **Number of Witnesses at Trial**

PAN objects to the exclusion of its proposed jury instruction regarding the number of witnesses permitted in the first phase of the trial. PAN proposed: "I have limited each side to two witnesses, one to introduce the company and one expert witness. You should not draw any

5

inferences from the failure of a party to present other witnesses." This would have guided jurors to focus on the substance of witness testimony rather than the number of witnesses, and would have helped address potential juror confusion regarding why certain witnesses did not appear to testify (e.g., the patent inventors).

### 2. Practicing the Prior Art Defense to Infringement

For purposes of appellate preservation, PAN maintains its objection to the exclusion of its instruction on practicing the prior art, which would read as follows:

> If PAN's accused products are within the prior art, they fall outside the proper scope of the claims of these asserted patents [in this case].
>
> Accordingly, if you find that the accused features of PAN's accused products are the same as features disclosed in a prior art reference, you should find that they do not infringe these asserted patents.

(D.I. 255 at 38). The Supreme Court and Federal Circuit have recognized that "practicing the prior art" is a defense to infringement in cases where assignor estoppel prevents an accused infringer from challenging the asserted patent's validity. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1379-1380 (Fed. Cir. 1998) (Where assignor estoppel prevents an accused infringer from asserting patent invalidity, the accused infringer may argue "that the accused devices are within the prior art and therefore cannot infringe") (citing *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 257-58 (1945)); *Saint-Gobain Performance Plastics Corp. v. Truseal USA, Inc.*, 351 F. Supp. 2d 290, 295 (D.N.J. 2005) ("Although assignor estoppel now precludes Defendants from challenging the validity of the [] patent they are not without a defense. 'An estopped party may also argue for a narrow claim construction or that the accused devices are within the prior art and therefore cannot infringe.'") (quoting *Mentor Graphics*, 150 F.3d at 1379 (citing *Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 342, 351 (1924); S*cott Paper Co.*, 326 U.S. at 257-58).

6

### 3. Invalidity

PAN disagrees with the Court's rulings applying assignor estoppel in this case. Accordingly, PAN believes its invalidity defenses were improperly excluded and reasserts the invalidity instructions in the parties' Proposed Joint Final Jury Instructions (D.I. 255) for purposes of appeal.

                          POTTER ANDERSON & CORROON LLP

                          */s/ Philip A. Rovner*

                          _____
                          POTTER ANDERSON & CORROON LLP
                          Philip A. Rovner (#3215)
                          Jonathan A. Choa (#5319)
                          Hercules Plaza
                          P.O. Box 951
                          Wilmington, DE 19899
                          (302) 984-6000
                          provner@potteranderson.com
                          jchoa@potteranderson.com
                          *Attorneys for Defendant Palo Alto Networks*

OF COUNSEL:

Harold J. McElhinny
Michael A. Jacobs
Matthew I. Kreeger
Matthew A. Chivvis
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Daralyn J. Durie
Ryan M. Kent
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

March 4, 2014

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on March 4, 2014 the within document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on March 4, 2014, the within document was served on the following persons as indicated:

### BY E-MAIL

Jack B. Blumenfeld, Esq.
Jennifer Ying, Esq.
Morris, Nichols, Arsht & Tunnel LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
jying@mnat.com

### BY E-MAIL

Morgan Chu, Esq.
Jonathan S. Kagan, Esq.
Talin Gordnia, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
mchu@irell.com
jkagan@irell.com
tgordnia@irell.com

Lisa S. Glasser, Esq.
David C. McPhie, Esq.
Rebecca Clifford, Esq.
Irell & Manella LLP
840  Newport Center Drive, Suite 400
Newport Beach, CA 92660
lglasser@irell.com
dmcphie@irell.com
rclifford@irell.com

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com