IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JUNIPER NETWORKS, INC.,     )
             )
     Plaintiff,     )
             )
     v.     )  Civ. No. 11-1258-SLR
             )
PALO ALTO NETWORKS, INC.,     )
             )
     Defendant.     )

**FINAL JURY INSTRUCTIONS**

Dated: March 5, 2014

**GENERAL INSTRUCTIONS**

**INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding the matters before you.  I will start by explaining your duties and the general rules that apply in every civil case.  I will explain some rules that you must use in evaluating particular testimony and evidence.  I will explain the positions of the parties and the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room.  Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide these matters.

## JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

3

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## USE OF NOTES

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.  Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember

other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**EXPERT WITNESSES**

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

PAN's expert conducted certain testing on PAN's source code.  In so doing, he was given greater access to PAN's source code than had been given to Juniper's expert in the first instance.  In evaluating the expert testimony in this case, you may not draw any adverse inference against Juniper just from the fact that PAN's expert conducted this type of testing and Juniper's expert did not.

10

## THE PARTIES AND THEIR CONTENTIONS

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

I will refer to plaintiff as "Juniper."

I will refer to defendant as "PAN."

Juniper is the owner of the United States patents at issue in this trial, U.S. Patent No. 8,077,723 which I will refer to as "the '723 patent," U.S. Patent No. 6,772,347 which I will refer to as "the '347 patent" and, U.S. Patent No. 7,107,612 which I will refer to as "the '612 patent."  I may refer to these patents collectively as "the asserted patents."

PAN sells network security products running PAN-OS, which are marketed under names including PA-5000 Series, PA-4000 Series, PA-3000 Series, PA-2000 Series, PA-500, and PA-200.  I may refer to these products collectively as the "accused products."

Juniper contends that each accused product infringes one or more of the following claims of the asserted patents, claim 1 of the '723 patent; claims 1 and 24 of the '347 patent; and claims 1 and 6 of the '612 patent.  These claims may be referred to as the "asserted claims."  PAN contends it does not infringe the asserted claims.

You will be asked to determine the issue of infringement according to instructions I will give you in a moment.

**BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  Juniper must prove its claims of patent infringement by, a burden of proof, called "a preponderance of the evidence."  When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.  To put it differently, if you were to put Juniper's and PAN's evidence of infringement on opposite sides of a scale, the evidence supporting Juniper's assertions would have to make the scale tip somewhat to Juniper's side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not Juniper has met its "more likely than not" burden of proof.

## PARTS OF A PATENT

Before you can decide whether or not any of the asserted claims are infringed, you will have to understand what patent "claims" are.  Patent claims are the numbered paragraphs at the end of a patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover.  The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

Claims are usually divided into parts, called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.  A claim covering the invention of a table is called an apparatus claim.  A claim describing the steps required to make a table is called a method claim. The scope of a patent is limited by the language of its claims.

In addition to the claims, a patent includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.

You may use the patent specification to:

(1) Understand the plain and ordinary meaning of terms not construed by the Court;

(2) Assist you in understanding the background of and the problems solved by the claimed invention; and

(3) Assist you in assessing infringement under the doctrine of equivalents, which inquiry focuses on an examination of the claims and the explanation of the claims found

13

in the written description - the specification - of the patent.

## DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '612 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 6 of the '612 patent is a dependent claim. If you look at claim 6, it refers to claim 1. Therefore, to determine what claim 6 covers, you must consider the words of claims 1 and 6 together.

## OPEN-ENDED OR "COMPRISING" CLAIMS

Several claims of the asserted patents use the transitional term "comprising." "Comprising" means "including without limitation" or "containing."  In patent claims, this term means that the claims are open-ended, that is, the claims cannot be limited to products that include only what is in the claim and nothing else.

If you find that the accused products or methods include all of the limitations in any of the asserted claims that use the term "comprising," the fact that they may also include additional elements or components is irrelevant.  The presence of additional elements or components does not mean that the method or product does not infringe a patent claim.

## CLAIM CONSTRUCTION

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use the meaning of each claim for your decisions on infringement.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

I instruct you that the following claim limitations in the '612 patent have the following definitions:

1.  The term **"rules"** is defined as "actions to be applied against packets, as distinct from a look-up table, which is a data structure that stores information."

I instruct you that the following claim limitations in the '723 patent have the following definitions:

1.  The term **"first engine"** is defined as "a first processor."

2.   The term **"second engine"** is defined as "a second processor."

3.  The term **"a tag"** is defined as "a structure for holding data."

4.  The term **"associat[e] ... a tag"** is defined as "form a connection with a tag."

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.

17

**PATENT INFRINGEMENT**

**OVERVIEW**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells (within the United States), offers to sell (from within the United States), or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In this case, Juniper alleges that the accused products and methods directly infringe the asserted claims.

You must decide whether or not Juniper has proven, by a preponderance of the evidence, that PAN has made, used, sold, or offered for sale a product or method covered by any of the claims at issue in this case.

If PAN infringes one claim of any of the asserted patents, then PAN infringes that patent even if, in good faith, PAN believed that it did not infringe.  PAN's knowledge or intent to infringe is not relevant.

18

## DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT

In order to prove direct infringement, Juniper must prove that each limitation of one or more asserted claims is present in the accused products or methods.  A claim limitation may be present in one of two ways:  literally or under the "doctrine of equivalents."  I will explain the doctrine of equivalents to you momentarily.

A claim limitation is literally present if it exists in an accused product or method as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

Literal infringement must be determined with respect to each asserted claim individually by comparing the elements of the accused product or method to each of that claim's limitations. If the accused product or method omits any single limitation recited in a given claim, then you must find that PAN has not infringed that claim. You must determine infringement with respect to each asserted claim and each accused product or method individually.

In determining whether an accused product or method literally infringes any asserted claim, you should take the following steps:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the Court or, if they have not been specifically construed by the Court, according to their ordinary meaning; and

Second, you should compare the accused product or method, element by element, to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim in the accused product

or method, you must return a verdict of literal infringement as to that claim.

If you did not find each and every limitation of the asserted claim in the accused product or method, you may not return a verdict of literal infringement as to that claim.

You must repeat the above analysis with every asserted claim.

There is one exception to this rule.  If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the accused product or method meets the additional requirements of any claims that depend from the independent claim, thus, whether those dependent claims have also been infringed.

You  have heard testimony that both parties have patents other than the asserted patents.  This information was provided simply as background for your benefit. In this regard, a defendant may infringe an asserted patent even if it owns patents covering the same or similar technology.

In this case, the asserted claims are not limited to ASICs or ACL engines or any other specific product.  Whether PAN uses or does not use ASICs or ACL engines is not relevant to the determination of whether the accused products literally infringe.

It remains your responsibility to determine whether Juniper has proven, by a preponderance of the evidence, that the elements of the accused products or methods meet the limitations of the asserted claims.

## INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you determine that not all of the limitations of a claim are literally present in the accused product, you must then determine whether there is infringement under the doctrine of equivalents.  Under the doctrine of equivalents, a product or method can infringe an asserted claim or limitation of a claim if it includes parts that are identical or equivalent to the limitations of the claim.  Under the patent law, an infringing equivalent is not treated any differently than a product or method that literally infringes the claim limitations of the patent.

You may find that a claim limitation is present in an accused product or method under the doctrine of equivalents if a person having ordinary skill in the art would have considered the differences between that claim limitation and a comparable element to be "insubstantial" or would have found that the structure or step: (1) performs substantially the same function; and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. In order for the structure or step to be considered interchangeable, the structure or step must have been known at the time of the alleged infringement to a person having ordinary skill in the art. Interchangeability at the present time is not sufficient.  As noted, the specification of the asserted patents may be used to assist you in determining whether the accused products perform substantially the same function in substantially the same way with substantially the same result as the requirements of the asserted claims.

In order to prove infringement by "equivalents," Juniper must prove the equivalency of the structure or steps to a claim limitation by a preponderance of the evidence.

21

**DELIBERATION AND VERDICT**

**INTRODUCTION**

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about the parties' claims.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

23

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m.  If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day.  You will need to respond in writing

24

to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may not read or listen to any news about the case in a newspaper, online or on television during the evening recess.

You may talk about the case only while you are in the jury room and everyone on the jury is present.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30 a.m.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 p.m. and 1:30 p.m. to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question during this time, you probably will not get an answer right away because we are all going to be stepping away from our phones.

**COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.

## ADDED INSTRUCTION
(read to jury after 4th full paragraph on page 20 of final written instructions)


During trial, you heard that Juniper does not claim to be using the '612 or the

'347 patents in its current products.  I am instructing you that the importance of the '612

and '347 patents to Juniper was presented to you only in the context of how its current

products are marked, not in the context of whether Juniper actually uses this technology

in its products.  There has been no evidence presented to you in this phase of the trial

as to whether Juniper does or does not use the technology and you, therefore, should

make your determinations on direct infringement based solely on the evidence of record

and my instructions as to the law.